IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BASSAM NABULSI and RIMA NABULSI, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-06-02683 |
| H.H. SHEIKH ISSA BIN ZAYED AL NAHYAN, | § § § | |
| Defendant. | § § | |

**DEFENDANT H.H. SHEIKH ISSA BIN ZAYED AL NAHYAN'S RESPONSE TO PLAINTIFFS' OPPOSED MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

Sheikh Issa Bin Zayed Al Nahyan ("Sheikh Issa") files this Response to Plaintiffs' Opposed Motion for Leave to File Third Amended Complaint and would show the Court the following:

### INTRODUCTION

This lawsuit was filed almost two and a half years ago. Until now, Plaintiffs' claims have remained virtually unchanged despite two very experienced trial lawyers having put these claims to paper in the public record in three successive, detailed complaints. Now, well after Defendant's motion to dismiss and in the face of remaining deadlines the Court strongly indicated that it desires to adhere to, Plaintiffs ask the Court to allow them to turn this case on its ear with a radically new Third Amended Complaint. (Ex. A, Redline Showing Changes from 2nd Am. Compl. to Third Am. Compl.)

From the day Bassam Nabulsi got out of prison and was deported from Abu

Dhabi (in the public interest and for his conviction for criminal possession of controlled substances[1]), the lynchpin of Plaintiffs' contract claims has always been a written document that Plaintiffs call the "Partnership Contract" related to a company called IBA United Co. L.L.C. ("IBA") (*See* Ex. B). In September 2005, not much more than two months after Nabulsi had served his prison sentence in Abu Dhabi, Nabulsi's attorney wrote an eleven page, single-spaced letter addressed to Sheikh Mohammed Bin Zayed Al Nahyan, the Crown Prince of Abu Dhabi, where he and Nabulsi first trotted out the partnership claim and the written, so-called "Partnership Contract":

> "The Sheikh and Mr. Nabulsi entered into a Partnership Agreement by executing a 'Partnership Contract,' a copy of which is enclosed."

(Ex. C, Sep. 21, 2005 Letter at 5.)

Then Plaintiffs filed suit, and, as explicitly and repeatedly pleaded in three successive complaints and several affidavits, the foundation for the claim was always the same—the October 1999 so-called "Partnership Contract."

| August 2006 Original Complaint | "The Sheikh and Mr. Nabulsi entered into a Partnership Agreement by executing a "Partnership Contract," a copy of which is enclosed. Under the Partnership Agreement, Mr. Nabulsi is made manager and is entitled to 49% of all of the profits." (¶ 35.) |
|---|---|
| May 2007 First Amended Original Complaint | "Mr. Nabulsi had a contract with the Sheikh to handle all of the Sheikh's business affairs. The Sheikh and Mr. Nabulsi entered into a Partnership Agreement by executing a 'Partnership Contract,' a copy of which is enclosed. Under the Partnership Agreement, Mr. Nabulsi is made manager and is entitled to 49% of all of the profits." (¶ 61.) |

---

[1] Plaintiffs' new assertions of alleged physical torture and supposed unfair treatment in the court system in Abu Dhabi has prompted an investigation by Defendant's counsel into these subjects. Defendant believes Plaintiffs' various claims regarding his incarceration and treatment by the Abu Dhabi court system are completely false and Defendant's counsel is actively seeking information to rebut these allegations. Defendant's counsel is still in the process of obtaining English translations of some of this information, but believe, as discussed below, that it will present a picture that is entirely different from what Nabulsi now alleges.

| May 2007 Affidavit of Bassam Nabulsi | "I was previously the Managing Partner of IBA United Co. This entity was a partnership between myself and [Sheikh Issa]. [Sheikh Issa] granted several powers of attorney to me to manage his affairs." (1.) |
|---|---|
| September 2007 Affidavit of Bassam Nabulsi | "I was previously the Managing Partner of IBA United Co. This entity was a partnership between myself and [Sheikh Issa]. [Sheikh Issa] granted several powers of attorney to me to manage his affairs." (1.) |
| June 2008 Second Amended Complaint | "Their agreement was formalized, in part, in a written partnership agreement." (¶ 6.)<br><br>"It was agreed between the partners that Mr. Nabulsi's compensation was to be forty-nine percent of all profits, after any capital was paid back . . . ." (¶ 7.)<br><br>"Defendant Sheikh Issa entered into a legally binding partnership agreement with the Plaintiff, Bassam Nabulsi. Under the terms of the contract, the Plaintiff was to receive forty-nine percent of all of the profits from all of the Sheikh's business enterprises." (¶ 32.) |

All of this ended in November of this year when the Plaintiffs were confronted with incontrovertible deposition testimony from a highly respected U.A.E. legal expert who made it perfectly clear that the so-called "Partnership Contract," relied on for all these years, had nothing to do with a partnership of any kind. (Ex. D, Dr. Faraj Ahnish Dep. at 184:4 to 185:5; 185: 12-21; 187:20 to 188:20.) Instead, the document was simply an amendment of the articles of organization of a limited liability company, IBA, whereby a third interest holder was removed and the percentages of participation in the company were changed—the very antithesis of a two person general partnership between Nabulsi and Sheikh Issa. (*Id.*; Ex. B.)

Recognizing the obvious implications of this testimony, Plaintiffs now ask the Court to let them change their factual allegations to assert a whole new theory—a vague, open-ended oral partnership supposedly agreed to in Houston. (*See* Proposed 3d Am. Compl. 6.) And they do so even though Nabulsi admitted in his deposition that "this handshake deal really did not materialize till I finally got the total power of attorneys that I got down the line in 2003 [in

Abu Dhabi] because, before, I was limited to IBA. . . ." (Ex. E, Nabulsi Dep. 131:10-13.) Plaintiff should not at this last minute of the jurisdictional resolution process be permitted to repudiate what has been represented in writing to the U.A.E., pleaded in three previous complaints, and sworn to in affidavits by Nabulsi himself and replace it with what is a whole new, although transparently flimsy, theory. Not one new thing is in the proposed Third Amended Complaint that Plaintiffs and their lawyers could not have written to Sheikh Mohammed in September 2005, pleaded in three iterations of their complaints, and sworn to in multiple affidavits. It is prejudicial in the extreme to Sheikh Issa to do the work to answer one theory of jurisdiction and then to be required to shift gears at the very end, when Plaintiffs and their lawyers are finally forced to recognize that their story to date is simply not enough to establish personal jurisdiction under existing law.

The proposed Third Amended Complaint and motion to amend offer no excuse for having switched horses so late in the game, especially when the new factual allegations did not come from the discovery process. The proposed complaint simply attempts, at an unwarranted late date, to offer new stories, to change percentages of the alleged partnership, and to insert new uncorroborated and inconsistent facts in a last-minute desperate act to avoid a dismissal. That tactic should not be permitted. Should the Court permit this amendment, the Defendant has the right to conduct discovery with respect to these new claims and the evidence presented by Plaintiffs and to file a new motion to dismiss to respond to the new claims. All of this simply comes too late to be fair.

## ARGUMENT

I. **Plaintiffs are not entitled to leave to amend under Rule 15(a) of the Federal Rules of Civil Procedure.**

Although Rule 15(a) provides that leave to amend pleadings should be freely

given "when justice so requires," FED. R. CIV. P. 15(a)(2), the Fifth Circuit has cautioned that "leave to amend 'is by no means automatic.'" *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) (per curiam) (quoting *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992)); *see also Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 891 (5th Cir. 1987) ("While leave to amend must be freely given, that generous standard is tempered by the necessary power of a district court to manage a case."). District courts have discretion to determine whether leave to amend should be granted, and an appellate court can reverse a district court's decision to deny leave only for an abuse of that discretion. *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007) ("'Whether leave to amend should be granted is entrusted to the sound discretion of the district court, and that court's ruling is reversible only for an abuse of discretion.'" (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)). "In deciding whether to allow amendment, a district court 'may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 608 (5th Cir. 1998) (quoting *In re Southmark Corp.*, 88 F.3d 311, 314-15 (5th Cir. 1996).

       The instant situation is not unlike those cases in the Fifth Circuit where, in the motion for summary judgment context, a trial court is entitled to deny a motion for leave to amend when a plaintiff seeks to amend allegations to assert a new theory or claim based on facts that were known to the plaintiff long before the proposed amendment and when the proposed amendment comes at the eleventh hour before the trial court's decision on a motion for summary judgment. *See Wimm*, 3 F.3d at 141 (5th Cir. 1993) (affirming trial court's denial of leave to amend based on bad faith or dilatory motive where plaintiffs were aware facts supporting their

new claims before they initiated the action, but did not present the claims until summary judgment was imminent); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 599 (5th Cir. 1981) (observing that the "awareness of facts and failure to include them in the complaint might give rise to the inference that the plaintiff was engaging in tactical maneuvers to force the court to consider various theories seriatim," but finding that the plaintiff's actions were not indicative of bad faith in that instance). Because, as discussed further below, the new facts alleged by Plaintiffs arise not from jurisdictional discovery conducted since the filing of Plaintiffs' last complaint, but instead are supported only by the uncorroborated statements of Bassam Nabulsi himself, the attempt to amend at this juncture presents a clear case of undue delay or worse.

## II. Plaintiffs Cannot Demonstrate Oversight, Inadvertence, or Excusable Neglect.

Plaintiffs have already amended their pleadings **two times**, and Nabulsi has submitted four separate affidavits[2], each in an attempt to embellish his factual allegations in a manner that will salvage his case in the face of jurisdictional challenges. This latest attempt to amend the complaint—the second during Plaintiffs' representation by current counsel—comes simply too late absent some extraordinary explanation. *See Lozano*, 489 F.3d 636, 644 (5th Cir. 2007) ("[T]he district court may consider that the moving party failed to take advantage of earlier opportunities to amend.") (citations omitted). Because Plaintiffs have unduly delayed in their latest attempt to amend, Plaintiffs have the burden of proving that the delay was due to "oversight, inadvertence, or excusable neglect." *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 994-95 (5th Cir. 2005) (quoting *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981)); *see also Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982) ("One important factor in the district court's decision is the timeliness of the motion to amend . .

---

[2] Three of these affidavits were submitted before Plaintiffs requested leave to file a third amended complaint. The fourth has just been submitted in connection with Plaintiffs' response to Sheikh Issa's motion to dismiss.

. . When there has been an apparent lack of diligence, the burden shifts to the movant to prove that the delay was due to excusable neglect.").

In this case, Plaintiffs cannot satisfy their burden of proving that their delay was the result of oversight, inadvertence, or excusable neglect. Plaintiffs contend that, based supposedly on "information [that] is now available due to the extensive discovery process," they "wish to amend their Complaint to plead certain factual claims with better detail, and to further clarify the relationship between [Sheikh] Issa and Nabulsi." (Pls.' Mot. 2.) But Plaintiffs' explanation is not credible because these new allegations come from Nabulsi himself, not the discovery process.[3] Accordingly, Plaintiffs' motion for leave should be denied due to Plaintiffs' inexcusable delay and their failure to establish a legitimate basis for the amendment at this late stage of these proceedings.

### III.    This amendment will unfairly prejudice Sheikh Issa.

Plaintiffs' motion for leave to amend also should be denied because Sheikh Issa would be prejudiced by the amendment under the circumstances presented here. Sheikh Issa's motion to dismiss justifiably was prepared on the basis of the Second Amended Complaint. He was entitled to rely on the accuracy of those allegations, which have now been radically altered. Plaintiffs should not be permitted simply to radically change the fundamental bases of their allegations at this stage of these proceedings—particularly where they are totally contrary to their earlier repeated allegations. As discussed below, Plaintiffs are engaged in a transparent

---

[3] Plaintiffs have also failed to comply with Local Rule 7.7: "If a motion or response requires consideration of facts not appearing of record, proof by affidavit or other documentary evidence must be filed with the motion or response." *See also Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979) (affirming denial of motion for leave to amend based on plaintiffs' failure to comply with similar local rule, undue delay, and evidence indicative of bad faith). Plaintiffs have not submitted any affidavits or evidence to support any of the contentions in their motion, especially their contention that the amendment is supposedly based upon information learned during the discovery process. (Pls.' Mot. 2.)

attempt to manufacture a case that they hope will survive Sheikh Issa's motion.

    A.    **Plaintiffs jump from a written "Partnership Contract" to an oral partnership allegedly formed in Texas.**

Plaintiffs' reliance on the so-called "Partnership Contract" all changed after an expert on U.A.E. law, Dr. Faraj Ahnish, explained that the "Partnership Contract" did not create or relate to a "partnership" form of business organization at all, but was merely an amendment to the articles of organization of IBA United Co. L.L.C., a limited liability company formed in the U.A.E. under U.A.E. law. Dr. Faraj Ahnish testified as follows:

> Q. ... [D]oes the document that is Exhibit No. 7 -- does this -- what kind of document is this, if you can tell?
>
> A. I'm just reading here from the preamble that the two parties agreed to amend the status of the company in the Emirate of Abu Dhabi, in accordance with the provisions of the law of commercial companies.
>
> Q. Is it -- is it fair --
>
> A. So it's a document which aims at amending an existing -- the status of the constituent documents of an existing company.
>
> Q. Okay. Is it fair to say that this appears to be an agreement or a contract of some sort?
>
> A. It is an agreement.
>
> Q. Is it an agreement or a contract -- is it an agreement or a contract that is creating a business organization under U.A. law -- U.A.E. law?
>
> A. From the preamble, it doesn't. Because it says "the parties hereby agree," both have the legal capacity to amend the status of the company in the Emirates of Abu Dhabi. So this document does not create a company. It simply -- it appears to be simply amending an existing document of an existing company. An existing constituent documents of a particular company. (Ex. D, Dr. Faraj Ahnish Dep. at 184:4 to 185:5.)
>
> * * *
>
> Q. Okay. And do I understand you correctly that the purpose of

this agreement appears to be to amend the constituent documents of an existing entity, business organization?

A. Yes.

Q. And what is the name of that business organization?

A. As it appears here in Article 3, it says the name of the company shall be IBA United, with limited liability. (*Id.* at 185: 12-21.)

* * *

Q. Looking at Exhibit No. 7, can you tell me the Arabic words that are translated "partnership contract"?

A. The Arabic words is "aked sharakah."

Q. Is "aked sharakah" one of the acceptable or recognized form of business organization --

A. No.

Q. -- under U.A.E. law?

A. No.

Q. You mentioned that one of the recognized

forms of business organization under U.A.E. law was a general partnership.

A. Yes.

Q. What are the Arabic words in the -- in the statute to -- for "general partnership"?

A. "Sharika tadamunia."

Q. So does this -- do you see anything on the face of this agreement that purports to be creating a general partnership within the meaning of U.A.E. law?

A. No.

Q. And as you've indicated, this document appears to amend -- intended to amend the constitutive documents of an existing LLC under U.A.E. law; is that correct?

A. Yes, yes. (*Id.* at 187:20 to 188:20.)

9

Now for the first time, in their proposed third amended complaint, Plaintiffs seek leave to allege that Nabulsi and Sheikh Issa entered into an **oral** partnership agreement in Houston, in which Nabulsi allegedly was empowered to manage Sheikh Issa's private and business affairs around the globe and was promised 50 percent of all profits of any kind—not 49 percent, as previously alleged—from any such venture located anywhere in the world. (Proposed 3d Am. Compl. 6.)  Upon finally recognizing fully the significant hurdles in establishing personal jurisdiction over Sheikh Issa on claims arising out of the affairs of a limited liability company that was created in Abu Dhabi and governed by Abu Dhabi law—a company that never completed a transaction in the United States, or elsewhere for that matter, that could form the basis for a contract claim—Plaintiffs now attempt to downplay the significance of this so-called "Partnership Agreement" by characterizing IBA as an entity formed to further a supposed and much more pervasive and general oral partnership. (*Id.*)  This change from an alleged **written** "Partnership Contract" to an alleged **oral** partnership agreement formed in Texas is a transparent attempt to manufacture a basis for specific personal jurisdiction at the last minute when it is evident that jurisdiction otherwise would certainly not be established by the facts as alleged in the current pleading.

      **B.**      **Nabulsi now purports to recall never before alleged acts of physical torture during his detention on drug charges in Abu Dhabi.**

In their first three complaints and in Nabulsi's numerous affidavits, Plaintiffs have repeatedly alleged mistreatment that may essentially be characterized as "psychological" in nature while Mr. Nabulsi was detained in connection with the drug charges. (*See* Orig. Compl. ¶¶ 30-31; 1st Am. Compl. ¶¶ 56-57; 2nd Am. Compl. ¶¶ 26-27.)  Until now, Plaintiffs never alleged any acts of physical torture beyond alleged "sleep deprivation," as a result of lights left on in his cell, and allegedly being forced to wear dirty clothes and to endure unclean conditions

during his detention.[4]

It is absolutely inconceivable that something like this could have occurred and not have been part of Plaintiffs' allegations since the inception of this case. These newfound and, incidentally, totally false atrocities are the most significant allegations of mistreatment of Nabulsi that have ever been alleged. Notably, these allegations were not made until after Sheikh Issa filed his motion to dismiss and until two weeks before Plaintiffs' response to the motion to dismiss is due. Plaintiffs' new allegations are simply not credible and are unfairly prejudicial to Sheikh Issa, whose motion to dismiss was based on the allegations that Plaintiffs now wish to bolster with eleventh hour concoctions.

Although Sheikh Issa's counsel does not accept that these allegations are relevant to whether the U.A.E.'s independent judicial branch can provide Plaintiffs with a fair hearing on their business claims as well as their claims of false arrest and "torture," Plaintiffs' reckless assertions regarding physical torture have prompted Sheikh Issa's counsel to investigate Nabulsi's treatment while he was in custody in Abu Dhabi and to attempt to obtain documentation that would rebut the false allegations. Attached hereto are Arabic documents, including an affidavit from an official of the Al Wathba Prison in Abu Dhabi where Nabulsi was incarcerated. (Ex. F.) Defendant's counsel are in the process of obtaining certified English translations but understand that the affidavit and the accompanying documentation will

---

[4] Indeed, in between the filings of the First Amended Original Complaint and the Second Amended Complaint, the Court even called into question whether the allegations regarding Nabulsi's alleged treatment while in custody actually constituted torture within the meaning of the Torture Victims Protection Act. (Mem. Op. and Order at 24 n.23 [Docket # 42].) The character of Plaintiffs' alleged "facts" concerning his treatment during detention, however, remained essentially unchanged for over a year following the Court's statement in the order referenced above until the proposed Third Amended Complaint in which Nabulsi suddenly purports to recall in vivid, graphic detail that he was physically tortured. (Proposed 3d Am. Compl. 13.)

demonstrate, among other things, that (1) Nabulsi's records do not show that he ever lodged a complaint about the conditions of his confinement (or a complaint of any type), (2) prisoners are given regular opportunities to file grievances; (3) U.S. citizens are permitted to contact the U.S. Embassy at any time, and may meet with representatives of the embassy every Wednesday during their weekly visit to Al Wathba; (4) the prison is under the operation of the Ministry of the Interior and not subject to influence by any other governmental agency or private individual; and (5) Sheikh Issa never had any influence over Nabulsi's imprisonment. Defendant's counsel will submit the certified English translations of these documents as soon as they have been obtained.

### C. Plaintiffs' proposed amended complaint contains other dramatic changes.

Plaintiffs' proposed third amended complaint contains other profound changes and inconsistencies with their earlier allegations. For example, confronted at his deposition with the record evidence of what really happened at the time of Mr. Nabulsi's arrest and conviction, Nabulsi now backs away from claims made in one affidavit and three prior complaints that the entire episode was one of trumped up marijuana charges, complete innocence, false incarceration, and mistreatment:

| Source | Statements Regarding Innocence |
|---|---|
| Original Complaint<br>*Filed August 16, 2006* | "Mr. Nabulsi's criminal charges came to trial and he was acquitted of all charges of marijuana possession. Still, even after his innocence was proven in court, the Defendants continued to hold Mr. Nabulsi in jail." (¶ 36.) |
| First Amended Original Complaint<br>*Filed May 18, 2007* | "He was acquitted of the marijuana charges brought against him. Despite the fact that the Abu Dhabi court found him innocent of these charges, he was not immediately released from prison." (¶ 39.) |
| Affidavit of Bassam Nabulsi | "I was subsequently drug tested and taken to the local prosecutor's office for a reading of the charges by the Abu Dhabi police. No evidence of marijuana was presented to the prosecutor to support the |

| | |
|---|---|
| *Filed December 20, 2007*<br><br>*Signed December 19, 2007* | allegations against me. The drug test revealed no evidence of marijuana in my system. Despite the complete lack of evidence (and the prosecutor's comments during the meeting that no evidence was present to justify detaining me and/or prosecuting me for drug charges), the prosecutor told me that he had received a call from his direct supervisor to "do nothing" with my case." (6.)<br><br>"Even after I was acquitted of the false charges against me, the nightmare did not end. I was taken back to Alwathbah prison and held for another 15 days." (7.) |
| Second Amended Complaint<br><br>*Filed June 16, 2008* | "Mr. Nabulsi's criminal charges ultimately came to trial and he was acquitted of all charges of marijuana possession. Still, even after his innocence was proven in court, he was kept in jail." (¶ 30.) |

He now admits that he was found in possession of controlled substances, which included anabolic steroids and a huge cache of powerful narcotics. (Proposed 3d Am. Compl. 15; Ex. E, Nabulsi Dep. at 134:20 to 135:9.) His new claim is that the criminal charges against him and his felony conviction for possession of far more dangerous drugs than marijuana should be discounted because the drugs were lawfully obtained prescriptions for Sheikh Issa. (Proposed 3d Am. Compl. 12.)

The reality is that Nabulsi received due process in Abu Dhabi. Just recently, Sheikh Issa's counsel has been able to obtain the court file reflecting Nabulsi's trial. (Ex. G.) The attached voluminous file reflects that Nabulsi was represented by two lawyers, presented his case to a panel of three judges at both the trial and appellate levels, and that the court considered evidence submitted by Nabulsi in his defense, including two notarized letters from a Houston doctor presumably offered to support a defense that the extensive controlled substances in his possession were actually prescriptions either for himself or Sheikh Issa.

Nabulsi was never charged with anything related to marijuana; the charges all pertained to controlled substances—powerful narcotics, powerful sleep medications, addictive

drugs, and the like. So, all the past pleadings about trumped up marijuana charges were just that—trumped up. Plaintiffs now recognize how specious those pleadings are and hope to amend to shift to a new explanation.

After reviewing the evidence, the prosecutor charged Nabulsi with unlawful drug possession and drug trafficking, not marijuana possession. The three-judge panel to which Nabulsi's case was tried ultimately decided that Nabulsi was guilty of unlawful possession of controlled substances, but acquitted him of the charges of trafficking in controlled substances. Although the panel credited Nabulsi's evidence that the drugs may have been prescribed, the panel nevertheless concluded that the drugs were possessed by Nabulsi in violation of U.A.E. law because they had not been prescribed by a doctor registered in the U.A.E. as required by U.A.E. law for controlled substances of the character possessed by Nabulsi. Nabulsi then appealed the court's decision, and another three-judge panel heard the appeal, but affirmed the lower court's decision. That sounds a lot like fair judicial process. Plaintiffs will have to account for how the Abu Dhabi justice system, which they allege to be a profoundly corrupt system that can be and was controlled by the whims and for the interests of Sheikh Issa and his family, demonstrated prosecutorial discretion in deciding what charges to bring against Nabulsi, and allowed him defense counsel, trial to a three-judge panel, and a considered appeal.

## CONCLUSION

Plaintiffs' proposed third amended complaint represents a last-minute sea change with respect to allegations that are important in the context of the Sheikh Issa's pending motion to dismiss. The new allegations were not derived from newly discovered facts coming out of jurisdictional discovery. They were simply made up out of whole cloth by Nabulsi. The circumstances demonstrate that the attempt to amend the complaint now amounts to undue delay or worse, and Plaintiffs cannot satisfy their resulting burden under the case law to show that their

delay in making these allegations was the result of "oversight, inadvertence, or excusable neglect." Allowing Plaintiffs to amend at this stage of the proceedings on Sheikh Issa's motion to dismiss simply could not be fair, as Sheikh Issa has not been allowed a full opportunity to respond to and develop evidence in opposition to Plaintiffs' newly minted allegations. Accordingly, Sheikh Issa respectfully asks the Court to deny Plaintiffs' Opposed Motion for Leave to File Third Amended Complaint. In the alternative, the Defendant should have the right to conduct discovery with respect to these new claims and the evidence presented by Plaintiffs and to file a motion to dismiss with respect to the third amended complaint.

Respectfully submitted,

/s/ Alistair B. Dawson
Alistair B. Dawson
State Bar No. 05596100
S.D. Tex. Bar No. 12864
Beck, Redden & Secrest, L.L.P.
1221 McKinney Street, Suite 4500
Houston, Texas  77010-2010
Telephone: (713) 951-3700
Telecopier: (713) 951-3720

ATTORNEY-IN-CHARGE FOR DEFENDANT
H.H. SHEIKH ISSA BIN ZAYED AL NAHYAN

OF COUNSEL:

BAKER BOTTS L.L.P.
B. Daryl Bristow
State Bar No. 03020000
S.D. Tex. Bar No. 4122
Michael B. Bennett
State Bar No. 00796196
S.D. Tex. Bar No. 21828
Timothy C. Shelby
State Bar No. 24037482
S.D. Tex. Bar No. 39044
One Shell Plaza
910 Louisiana
Houston, Texas 77002
Telephone: 713.229.1234
Facsimile: 713.229.1522

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all counsel of record on December 29, 2008, in accordance with the Federal Rules of Civil Procedure.

/s/ Alistair B. Dawson
Alistair B. Dawson