# EXHIBIT 21

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 126634 (S.D.Tex.)
(Cite as: 2006 WL 126634 (S.D.Tex.))

Page 1

c

Only the Westlaw citation is currently available.

United States District Court,
S.D. Texas, Galveston Division.
Carlos RYERSON, Plaintiff,
v.
Carlos Romero DESCHAMPS, Defendant.
**No. Civ.A. G-05-092.**

Jan. 13, 2006.

Anthony G. Buzbee, Attorney at Law, Galveston, TX, for Plaintiff.

George Munoz, Attorney at Law, Washington, DC, Joseph G. Soliz, The Soliz Law Firm PLLC, Houston, TX, for Defendant.

*ORDER GRANTING DEFENDANT'S MOTION TO DISMISS*

KENT, J.

**\*1** This case arises out of an alleged tortious interference by Defendant with a legal services contract entered into between Plaintiff Carlos Ryerson ("Plaintiff") and a Mexican Union with whom Defendant was formerly affiliated. Now before the Court is Defendant's Motion to Dismiss, which seeks dismissal based on lack of personal jurisdiction, *forum non conveniens,* and improper venue. For the reasons articulated below, Defendant's Motion is GRANTED, and this case is DISMISSED WITHOUT PREJUDICE.[FN1]

> FN1. The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

I. Background

Plaintiff is a Houston attorney who was hired by the Petroleum Workers Union of the Republic of Mexico ("the Union") in 1990 to represent it in litigation then pending in Harris County District Court ("the Arriba Litigation"). During the litigation, Plaintiff agreed to defend the Union in any future claims relating to the Arriba Litigation. In 1998, Plaintiff was personally hired by Enron and was relegated to a peripheral role in the Arriba Litigation which was on appeal. In 2000, Ryerson left the employ of Enron, and the Arriba Litigation subsequently heated up again. In late 2003 or early 2004, Ruben Choreño, the Union representative with whom Plaintiff originally dealt, again asked Plaintiff to help with the Arriba Litigation. Plaintiff began working on the case again, and a settlement was ultimately reached. According to Plaintiff, the settlement agreement, for varied and personal reasons, was not in Defendant's best interest. Defendant took the position that the settlement was invalid and that Plaintiff was not authorized to act on behalf of the Union. According to Plaintiff, Defendant persuaded other Union officials to abandon the settlement agreement, which fell through, depriving Plaintiff of his agreed-upon fee. It is Defendant's actions in causing the failure of the settlement agreement that form the basis of Plaintiff's tortious interference and fraud claims.

II. Personal Jurisdiction

*A. Legal Standard*

As a nonresident of Texas, Defendant is subject to personal jurisdiction in this District if he is amenable to service of process under Texas's long-arm statute and the exercise of personal jurisdiction is consistent with due process. *See Jones v. Petty-Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.1992). Since the Texas long-arm statute reaches as far as the Constitution allows, there is a single inquiry into whether jurisdiction over Defendant is consistent with the Due Process Clause

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

of the United States Constitution. *See Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.1994).

Whether the exercise of personal jurisdiction over Defendant is consistent with the Due Process Clause requires a two-pronged inquiry. First, the Court must conclude that Defendant has "minimum contacts" with the forum state. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must determine that requiring Defendant to litigate in the forum does not offend "traditional notions of fair play and substantial justice."*Id.* The "minimum contacts" aspect of due process can be satisfied by finding either specific jurisdiction or general jurisdiction. *See Wilson,* 20 F.3d at 647. Contacts unrelated to the cause of action may confer general jurisdiction, but these contacts must be both "continuous and systematic" and "substantial." *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). A defendant's limited contact with the forum state may support specific jurisdiction if it gives rise to the cause of action. *See Ruston Gas Turbines, Inc. v. Donaldson Co. .,* 9 F.3d 415, 419 (5th Cir.1993). Specific jurisdiction, the only type alleged by Plaintiff, is proper if (1) the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws," and (2) the controversy arises out of or is related to the defendant's contact with the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *see also Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784 (5th Cir.1990). The burden is on Plaintiff to establish jurisdiction. *See id.* at 785.

*B. Analysis*

*\*2* Plaintiff alleges the following facts to support the exercise of personal jurisdiction over Defendant: (1) Defendant sent an agent to Texas to fire Plaintiff as attorney for the Union, (2) Defendant directed others to communicate to Arriba's counsel

that the settlement agreement was invalid, and (3) Defendant took "legal efforts" in Texas to invalidate the settlement.[FN2] Plaintiff's Response ultimately accuses Defendant of taking actions in Texas to interfere with a Texas contract.

> FN2. Plaintiff does not state what "legal efforts" Plaintiff took in Texas to invalidate the settlement. Accordingly, this statement is merely conclusory and will not be given substantial weight by the Court.

These allegations, taken as true, are enough to support the exercise of personal jurisdiction over Defendant. Plaintiff focuses on several letters from Defendant. One letter, sent in late 2004, was from Defendant and required Plaintiff to clear all further action in the case with another attorney. A second letter from Defendant told Plaintiff that he no longer had authority to act on behalf of the Union. According to Plaintiff, Defendant was not authorized by the Union to send these communications. In addition, Plaintiff alleges that Defendant wrongfully persuaded Union officials to rescind the settlement agreement. The communications between Defendant and other Union officials necessarily occurred in Mexico, where Defendant and all other Union officials are residents.

In *Panda Brandywine Co. v. Potomac Electric Power,* 253 F.3d 865 (5th Cir.2001), the Fifth Circuit found no personal jurisdiction over a Defendant where the contract allegedly interfered with was not governed by Texas law, was not to be performed in Texas, and was unrelated to Texas in any way other than the residence of the Plaintiff. Though Defendant cites *Panda Brandywine* as authority for its arguments, that case is factually distinct from the instant case. Here, performance of the contract was to be in Texas, and this case is more analogous to *Central Freight Lines Inc. v. APA Transport Corp.,* 322 F.3d 376 (5th Cir.2003), where the Court supported jurisdiction over a Defendant who interfered with a contract to be performed in Texas. "Although mere allegations of tortious interference with a forum resident's con-

tractual rights are not sufficient to establish specific personal jurisdiction, it is clear that specific personal jurisdiction may be based on intentionally tortious conduct that is purposefully directed toward the forum state." *Id.* at 383.According to Plaintiff, Defendant intended to interfere with Plaintiff's contract and did so by making false statements in letters and through agents concerning Plaintiff's continuing relationship with the Union. These actions are enough to establish minimum contacts with the State.

Having found sufficient minimum contacts, this Court must consider whether the exercise of personal jurisdiction would offend the traditional notions of fair play and substantial justice. Though trial in Texas will no doubt be inconvenient for Defendant, a Mexican resident, it does not rise to the level of offensiveness. In making this determination, the Court considers: "(1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

*3 In this case, only the first factor, which will be considered in more detail below weighs against the exercise of jurisdiction. However, the remaining factors in this test make it clear that exercising personal jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice. The courts in this state have an interest in protecting the contracts of its practicing lawyers, therefore have an interest in this case. The consideration of the interstate judicial system is lessened in this case, since there is no alternative state being proposed, but rather an alternative country-Mexico. Consideration of the relative merits of pursuing this case in Mexico are addressed more fully below.

The Court notes that this case presents a very difficult and close question of law. While the Court has done its best to apply the guidance of the Fifth Circuit as outlined in its previous decisions, it welcomes the advice of that higher Court, should the Parties choose to seek it. Having said that, this Court finds that Defendant could have reasonably expected to be called into a Texas court, and has sufficient minimum contacts with the State of Texas appropriate to confer jurisdiction on this Court.

III. *Forum Non Conveniens*

A. *Legal Standard*

The doctrine of *forum non conveniens* derives from the proposition that "[i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 722, 116 S.Ct. 1712, 1724, 135 L.Ed.2d 1 (1996). Pursuant to this doctrine, a court may dismiss a case in favor of a foreign forum if the defendant establishes that the convenience of the parties and the court, coupled with the interests of justice, indicate that the lawsuit is better suited for adjudication elsewhere. *See Karim v. Finch Shipping Co., Ltd.,* 265 F.3d 258, 268 (5th Cir.2001).

Federal courts employ a two-part analysis when applying the *forum non conveniens* doctrine in the international context. *See Piper Aircraft v. Reyno* 454 U.S. 235, 255-56, 102 S.Ct. 252, 265-66, 70 L.Ed.2d 419 (1981). The first step involves a determination of whether an adequate and available foreign forum exists. *See Sydow v. Acheson & Co.,* 81 F.Supp.2d 758, 768 (S.D.Tex.2000). Next, if an adequate alternative forum is available, the court must decide whether "certain private and public interest factors weigh in favor of dismissal." *McLennan v. Am. Eurocopter Corp.,* 245 F.3d 403, 424 (5th Cir.2001). If the relevant private interest factors advocate dismissal, however, no inquiry into the public interest factors in needed. *See Baris v.*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*Sulpicio Lines,* 932 F.2d 1540, 1550-51 (5th Cir.1991). While undertaking both steps of this analysis, courts must remain mindful that "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper Aircraft,* 454 U.S. at 256, 102 S.Ct. at 266. *See also Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.,* 796 F.2d 821, 827 (5th Cir.1986).

**\*4** The private factors to be considered in a *forum non conveniens* analysis relate to the convenience of the parties, and include: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses, possibility of viewing the premises, if such viewing would be appropriate to the action; other practical problems that make a trial of a case easy, expeditious, and inexpensive; enforceability of judgment; and whether the plaintiff has sought to vex, harass, or oppress the defendant. *See Karim,* 265 F.3d at 268 n. 14 (citations omitted). The "public interest" factors include: administrative difficulties; reasonableness of imposing jury duty on the people of the community; holding the trial in the view of those affected; and the local interest in having localized controversies decided at home. *See id.*

### B. Analysis

#### 1. Adequate Forum

Defendant argues that Mexico presents an adequate alternative forum for the adjudication of this dispute and that Mexican law allows for the redress of the claims alleged by Plaintiff. An alternative forum is available to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be dismissed. *See Piper,* 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22 (citation omitted) ("Ordinarily, [the requirement] will be satisfied when the defendant is amenable to process in the other jurisdiction"). The alternative forum is adequate as long as the parties will be treated fairly and will not be deprived of all remedies there. *See*

*Sydow,* 81 F.Supp.2d at 768. *See also Piper,* 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22.

Plaintiff has not presented, and the Court is not aware of, any obstacles to justice within the Mexican court system. Accordingly, the Court finds that Mexico is an available and adequate forum for litigation of this matter.

#### 2. Private Interests

The private interest factors in this case weigh heavily in favor of adjudicating it in Mexico. Any documentary evidence needed in the preparation and presentation of this case can be transferred between Mexico and Texas with relative ease, so that bears no burden on this *forum non conveniens* analysis. However, the cost and ability of obtaining testimony and attendance of both willing and unwilling witnesses weighs substantially in favor of a Mexican adjudication. Plaintiff's only argument on this issue is that he lives in Texas, so it would be more convenient for him to try the case here. While that is undoubtedly true, it wholly ignores every other person relevant to the resolution of this case, all of whom are Mexican nationals. These witnesses include Defendant and other Union representatives. This Court cannot compel the attendance at trial or deposition of unwilling witnesses who live and work in Mexico. Moreover, the cost of obtaining testimony from willing witnesses will be higher when all of those witnesses live in Mexico. In fact, Defendant himself is currently prohibited from leaving Mexico. Consideration of the availability of key witnesses clearly supports trial in Mexico.

**\*5** This is currently a case against a Mexican national, and any judgment against him would have to be satisfied from his personal assets, which this Court presumes are located in Mexico. This Court simply cannot enforce a judgment that would require seizure of assets located in a foreign country. The evaluation of the private factors relevant to this case, clearly shows that Mexico is a superior forum for the Parties' dispute.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*3. Public Interest*

Courts often turn to the interests of the public when considering an argument of *forum non conveniens.* However, since the private factors in this case weigh heavily in favor of dismissal, no further inquiry is necessary, and dismissal based on the doctrine of *forum non conveniens* is appropriate in this case. *See Baris,* 932 F.2d at 1550-51.

IV. Venue

It is unclear to this Court what connection this case has to this Division of the Southern District of Texas. Any connections this case has with the State of Texas are with Houston, and this case would more appropriately proceed there. While the Court is always flattered by the desires of Parties to litigate their disputes here, it is simply unable to hear cases which are not appropriately before it. Accordingly, should this case ever be before this Court again, it will be transferred to the Houston Division of this District.

V. Conclusion

The Court thanks both Parties for the excellent advocacy displayed in the well-prepared briefs submitted in connection with this Motion. It is always an honor, and frankly a lot of fun, to preside over cases involving attorneys of such high caliber. However, subjective preference aside, the Court finds that this case would more appropriately be litigated in either Mexico or Houston. Accordingly, Defendant's Motion to Dismiss is GRANTED, CONDITIONED on the willingness of Defendant to submit to the jurisdiction of the Mexican courts for any action Plaintiff commences in Mexico, based on these facts, within six months of the date of this Order. All claims asserted by Plaintiff in this action are DISMISSED WITHOUT PREJUDICE. A Final Judgment will be issued contemporaneously with this Order. All taxable costs, expenses and attorney's fees shall be borne by the Party incurring same.

IT IS SO ORDERED.

S.D.Tex.,2006.
Ryerson v. Deschamps
Not Reported in F.Supp.2d, 2006 WL 126634 (S.D.Tex.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 22

273 F.3d 1095                                                    Page 1
273 F.3d 1095, 2001 WL 1085140 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 273 F.3d 1095, 2001 WL 1085140 (C.A.5 (Tex.)))**

**H**

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Fifth Circuit Rule 47.5.4. (FIND CTA5 Rule 47.)

United States Court of Appeals,
Fifth Circuit.
WIEN AIR ALASKA, INC., Plaintiff-Appellant,
v.
Gerald I. BRANDT, Defendant-Appellee.
**No. 01-10450**
**Summary Calendar.**

Sept. 5, 2001.

Appeal from the United States District Court For the Northern District of Texas, (4:95-CV-591-Y).

Before DeMOSS, PARKER, and DENNIS, Circuit Judges

PER CURIAM: FN*

> FN* Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

*1 Wien Air Alaska, Inc. ("Wien") has appealed the district court's dismissal of this case on grounds of forum non conveniens. We affirm the district court's ruling.

Wien sued Gerald Brandt in a Texas state court alleging that Brandt defrauded the company in an overseas business venture. Wien is a Texas corporation engaged in the business of leasing commercial aircraft on an international basis. Brandt is an attorney, and a citizen and resident of the Federal Republic of Germany ("Germany"). After removing

this case to the Northern District of Texas, Brandt filed a motion to dismiss the case on forum non conveniens grounds. The district court granted Brandt's motion and this appeal followed.

We review a district court's dismissal on forum non conveniens grounds for "clear abuse of discretion." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *see also Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 221 (5th Cir.2000); *Dickson Marine, Inc. v. Panalpina, Inc.,* 179 F.3d 331, 341 (5th Cir.1999) (both citing *Piper Aircraft* )."[G]enerally, a district court abuses its discretion when it grants a motion to dismiss without oral or written reasons or if it fails to address and balance the relevant principles and factors." *Dickson Marine,* 179 F.3d at 341. We therefore only reverse the lower court's decision if it made unreasonable or unsupported conclusions when applying the forum non conveniens factors discussed in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).*See Alpine View,* 205 F.3d at 221.

District courts apply a three step inquiry in determining whether to dismiss a case on forum non conveniens grounds. First, the court determines whether an available and adequate forum exists where "the entire case and all of the parties come within the jurisdiction of that forum." *Dickson Marine,* 179 F.3d at 342. Second, if an adequate alternative forum exists, the court balances several "private interest" factors to determine if dismissal is warranted. *See id.*If the private interest factors weigh in favor of dismissal, the court need not make further inquiry. *Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1549 (5th Cir.1991), *cert. denied,* 502 U.S. 963, 112 S.Ct. 430, 116 L.Ed.2d 449 (1991). Finally, if the private interest factors remain closely balanced, the district court may dismiss the action based on "public interest" factors that favor the alternative forum. *See In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1165 (5th Cir.1987).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

273 F.3d 1095, 2001 WL 1085140 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 273 F.3d 1095, 2001 WL 1085140 (C.A.5 (Tex.)))**

The district court found that Germany was an adequate and available alternative forum. The only evidence in this case regarding the adequacy of the German legal system suggests that it is sophisticated and that it recognizes the relevant causes of action in this case. The fact that the filing fee in German courts is one percent of the total recovery sought does not make German courts inadequate alternative forums. *See, e.g., Mercier v. Sheraton Int'l, Inc.,* 981 F.2d 1345, 1353 (1st Cir.1992) (holding that a fifteen percent cost bond did not make Turkish courts unavailable); *Nai-Chao v. Boeing Co.,* 555 F.Supp. 9, 16 (N.D.Cal.1982), *aff'd,* 708 F.2d 1406 (9th Cir.), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983) (holding that a one percent filing fee was not relevant to the adequacy of the foreign forum).

**\*2** The district court also found that the private interest factors in this case weighed in favor of Germany. The Supreme Court has held that the following private interest factors are relevant to the forum non conveniens inquiry: (1) the relative ease of access to evidence; (2) the availability of compulsory process of likely witnesses; (3) practical considerations such as the cost and speed of trial; and (4) the enforcibility of judgment if one is obtained. *See Gilbert,* 330 U.S. at 508-09.

In weighing the private interest factors in this case, the court considered the following facts. First, the court noted that although Wien is incorporated in Texas, it is an international corporation that maintained offices in Germany at the time that its causes of action accrued. Brandt, on the other hand, is an individual residing in Germany, who made only one trip to Texas upon Wien's insistence. Second, the district court found that the majority of the key witnesses in this case live in or around Germany. This finding was based in part on the fact that the transaction at issue involved the sale of commercial aircraft in Germany and the possible expansion of Wien's business in Eastern Europe. Third, the court noted that the contracts at issue in this case are written in German, and that German law will prob-

ably govern this case. Fourth, Brandt showed that he owned no assets in the United States, so that enforcing a judgment in this case would ultimately require Wien to file suit in Germany. Finally, the court noted that as a practical matter, Germany has an interest in policing the activities of its attorneys, particularly when they are engaged in activities centered in Germany.

We conclude that the district court did not abuse its discretion in finding (1) that German courts provide an adequate alternative forum and (2) in balancing the private interests in favor of Germany. We therefore AFFIRM the district court's dismissal of Wien's action on forum non conveniens grounds.

C.A.5 (Tex.),2001.
Wien Air Alaska Inc. v. Brandt
273 F.3d 1095, 2001 WL 1085140 (C.A.5 (Tex.))

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 23

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | Texas |
| --- | --- | --- |

Bassam Nabulsi, et al.

V.

**SUMMONS IN A CIVIL CASE**

H.H. Sheikh Issa Bin Zayed Al Nahyan

CASE NUMBER: H-06-2683

TO: (Name and address of Defendant)

H.H. Sheikh Issa Bin Zayed Al Nahyan
P. O. Box 464
Abu-Dhabi, UAE

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

an answer to the complaint which is herewith served upon you, within _____70_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Michael N. Milby

CLERK

(By) DEPUTY CLERK

DATE    6/4/08

Case 4:06-cv-02683    Document 51    Filed in TXSD on 06/23/2008    Page 2 of 2

O AO 440 (Rev. 10/93) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me(1) | DATE June 19, 2008 | |
| NAME OF SERVER (PRINT)   Nelson Tucker | TITLE   Registered Process Server | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the third-party defendant.  Place where served:  _____

☐ Left copies thereof at the defendantis dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:  _____

☐ Returned unexecuted:  _____

■ Other (specify):  Left copies thereof at the defendant's usual place of business by serving Asmail Alabras, Assistant to Defendant, who ☒ on behalf of Defendant.  Served at Pearl Properties, Oud Medha Road at 10th Street, First Floor, Dubai, UAE

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL  $9225.50 | SERVICES  $20,000.00 | TOTAL  US$29,225.50 |

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on   June 20, 2008
　　　　　　　　　Date　　　　　　　　　Signature of Server

Process Service Network, LLC, 20832 Roscoe Blvd., Winnetka, CA
Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**RETURN OF SERVICE**
(Declaration of Service)

**United States District Court**
**Southern District of Texas**

I, Nelson Tucker, hereby declare that the following facts are true and correct and that I could competently testify, if called, that:

1. I am a citizen of the United States of America, am over 18 years of age, and not a party to the within-action. I am a Registered Process Server in the County of Los Angeles, State of California, and have been so employed for the past 30 years. I am the President of Process Service Network, LLC and personally supervise all international service of process assignments. I have authored three (3) books on service of process and regularly teach a college course on the subject. I have personally trained over 1700 process servers in the past 24 years.

2. I have over 20 years experience in service of process on the International level, and have supervised the service of approximately 100 papers in the United Arab Emirates ("UAE"). The U.A.E. is not a signator to the Hague Convention, and the U.A.E. does not make use of Letters Rogatory. The method of service I have always used in the U.A.E. is through mailing, through personal service of the individual or his agent using our affiliate process server in the UAE.

3. On June 5, 2008, I received an assignment from The Buzbee Law Firm to personally serve a Summons and Plaintiff's First Amended Complaint related to the case Nabulsi vs. Nahyan, et al., case no H-05-2583, upon H.H. Sheikh Issa Bin Zayed Al Nahyan ("Defendant") at his home and business addresses in the UAE. I was advised that the service deadline was June 30, 2008.

4. On June 5, 2008, I forwarded the service assignment to our affiliate process server in Abu Dhabi, UAE, along with written instructions to serve the Defendant at his residence address of Palace of Sheikh Issa Bin Zayed Al Nahyan, Abu Dhabi, UAE.

5. On June 12, 2008, I was advised by the process server that the Defendant had moved from the Palace and was now residing in Dubai, UAE. He further advised me that he had mailed copies of the service documents to the Defendant at the Defendant's last known address, P.O. Box 464, Abu Dhabi, UAE.

6. On June 13, 2008, I entered into an agreement with Plaintiff's attorney to personally travel to UAE in order to personally serve the Defendant before the Court-ordered deadline for service. I received the sum of US$20,000.00, plus a Business-class ticket on Cathay Pacific Airlines valued at US$9,225.50.

7. On June 17, 2008, I traveled to Dubai, UAE for the purpose of serving the Defendant.

8. On June 19, 2008, I attempted service on the Defendant at his business address of Emirates Towers Office Building, 45th Floor, Sheikh Zayed Road, Dubai, UAE. I was advised by the security guard that the Defendant had moved his offices.

9. On June 19, 2008, at 1:45 p.m., using my cell phone from outside the Defendant's offices, I called the telephone number provided to me for the Defendant, +971043366661. The phone was answered as "Pearl Properties." I inquired if the Defendant was available and the receptionist advised me that he was not in the office but that his Business Manager could assist me. I have learned through my research that Defendant Sheikh Issa is the owner of Pearl Properties, and the individuals with which I spoke confirmed such.

1

10. On June 19, 2008, I attempted service on the Defendant at his current business address of Pearl Properties, Oud Medha Road at 10th Street, First Floor, Dubai, UAE. I was advised by the receptionist that the Defendant was not in the office. I inquired if the Defendant's Business Manager, Seif Al Suwaidi ("Suwaidi") was present.   The receptionist called an unknown party of the intercom and she advised me that he would be right out.

11. On June 19, 2008, at 1:50 p.m., a male identified himself to me as Asmail Alabras, Assistant to the Defendant. He stated to me that he is employed by the Defendant. He further advised me that the Defendant was not currently in the office. I advised him as to the general nature of the papers and he agreed to accept them on behalf of the Defendant.  He was over the age of 18 years. He spoke fluent English. He agreed to accept the papers on behalf of the Defendant and agreed to provide the papers to the Defendant.

12. On June 19, 2008, I mailed a copy of the service documents to the Defendant at the same address where the documents were left.   The mailing was accomplished via certified mail in Dubai, UAE.

13. There are no other known addresses for service. Based on my experience, the service accomplished is proper under the laws of UAE and the United States of America. The service was made pursuant to Federal Rules of Civil Procedure, Rule 4(f)(2)(A) and, if ordered, would be proper pursuant to Rule 4(f)(3). There are no treaties between the United States of America and the UAE related to service of process, including The Hague Service Convention. There is no prohibition to such service accomplished herein, and, moreover, based on my experience, such service method is actually prescribed by the laws of the U.A.E. The method of service used to serve the Defendant herein has been used by my company many times.

14. In addition to the above-stated methods of service, I also mailed copies of the service documents to the Defendant at the addresses mentioned in paragraphs #3 and #4, above, via regular mail. (There is no method of certified mail service in the U.A.E. providing for a return receipt). Such mailings are intended, in an abundance of caution, to ensure that actual notice is given to the Defendant.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 20th day of June 2008, at Los Angeles, CA.

Nelson Tucker
Process Service Network, LLC
20832 Roscoe Blvd. #110
Winnetka, CA 91306 USA
818-772-4796
Registered Process Server
Los Angeles County #1803

2

# EXHIBIT 24

Page 1

1                IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
2                     HOUSTON DIVISION
3   BASSAM NABULSI, AND HIS WIFE,  )
    RIMA NABULSI,                   )
4                                   )
         Plaintiffs           )
5                                   )
    V.                              )  CIVIL ACTION NO. H-06-2683
6                                   )
    H.H. SHEIKH ISSA BIN ZAYED AL   )
7   NAHYAN, H.H. SHEIKH NASSER BIN  )
    ZAYED AL NAHYAN, H.H. SHEIKH    )
8   SAIF SAIF BIN ZAYED AL NAHYAN,  )
    H.H. SHEIKH MOHAMMED BIN ZAYED  )
9   AL NAHYAN, AND THE PARTNERSHIP  )
    OF THE ROYAL FAMILY BIN ZAYED   )
10  AL NAHYAN,                      )
                                    )
11       Defendants.           )
         -------------------------------
12            VIDEOTAPED ORAL DEPOSITION OF
13               ISMAIL MOHAMMED ALABRAS
14                NOVEMBER 6, 2008
         -------------------------------
15

16       VIDEOTAPED ORAL DEPOSITION OF ISMAIL

    MOHAMMED ALABRAS, produced as a witness at
17
    the instance of the Plaintiffs, and duly sworn, was
18
    taken in the above-styled and numbered cause on the
19
    6th day of November, 2008, from 3:14 p.m. to 4:53
20
    p.m., before Mary Abbott Burkes, CSR in and for the
21
    State of Texas, reported by machine shorthand, at
22
    Le Trianon Palace Westin, 1 Boulevard de la Reine,
23
    Versailles, France 78000, pursuant to the
24
    Federal Rules of Civil procedure and the provisions
25

Page 2

```
1              A P P E A R A N C E S
2
    FOR THE PLAINTIFFS:
3
        Mr. Anthony G. Buzbee
4       Mr. Nicholas Simon
        THE BUZBEE LAW FIRM
5       JP Morgan Chase Tower
        600 Travis, Suite 6850
6       Houston, Texas 77002
7
    FOR THE DEFENDANTS H.H. SHEIKH ISSA BIN ZAYED AL
8   NAHYAN, ET AL.:
9       Mr. Michael B. Bennett
        Mr. Peter R. Griffin
10      BAKER BOTTS, L.L.P.
        One Shell Plaza
11      910 Louisiana Street
        Houston, Texas 77002-4995
12
        -and-
13
        Mr. Alex Roberts
14      BECK, REDDEN & SECREST, L.L.P.
        One Houston Center
15      1221 McKinney Street, Suite 4500
        Houston, Texas 77010-2010
16
    VIDEOGRAPHER:
17
        Ms. Beth Fein
18
    ALSO PRESENT:
19
        Ms. Hal Mudhawfer, Defendant's interpreter
20      Mr. Bassam Nabulsi
21
22
23
24
25
```

Electronically signed by Mary Burkes (201-400-728-1433)                    a6c27227-8bfe-4167-8d48-6898da751694

1      A.   There nothing -- there were nothing
2   officially written that it was addressed to
3   somebody.
4      Q.   You were -- you were told to give it to
5   your boss, right?
6      A.   Yes.  But there were no address, and I
7   cannot handle it like this.
8      Q.   So you refused to give it to your boss?
9      A.   What do you mean by I refused to hand it to
10  my boss?
11     Q.   You were asked to provide the package to
12  your boss.  True statement?
13     A.   Yes, it's true, yeah.  But the right things
14  is when somebody handed me something, it would be
15  identified.  It would be addressed to somebody.
16  Because I receive hundreds of packages and letters
17  every day.
18     Q.   How many people work at Pearl Properties?
19     A.   Nearly 15 or 16.
20     Q.   Okay.  And you say you receive hundreds of
21  packages a day?  Is that what you just told me?
22     A.   It's not hundreds, I mean, the figure.  But
23  I receive many publicities, magazines and
24  newspapers and packages like that.
25     Q.   And usually when you receive a package and

1   you're asked to provide it to your boss, you do so,

2   right?

3       A.   No, it is not true if it is not recorded.

4       Q.   What do you mean by that?

5       A.   The packages where nothing is written is

6   not important, are not important.

7       Q.   You knew an American came to your company,

8   right?

9       A.   I don't know that he's American, but he was

10  speaking English.

11      Q.   You knew he was a foreigner, right?

12      A.   Yes, foreigner.

13      Q.   So you knew a foreigner came to your

14  company with a package, right?  Right?

15      A.   Yes.  He came.  Yes, he came.  But I didn't

16  know why, what was the purpose of his coming.

17      Q.   I hear you.

18              My question is:  You knew he was a

19  foreigner, and you knew he had a package for your

20  boss, right?

21      A.   I don't understand exactly the question.

22  Do you mean that I knew before he arrived to the

23  place or after he arrived to the place I knew that

24  he was a foreigner and he was having something to

25  handle?

1     Q.   Okay.  You knew a foreign man was standing
2  in front of you in your office -- or at the
3  company's office, right?
4     A.   He -- not in front of me.  He was standing
5  with my colleague, somebody was working with me.
6     Q.   Okay.
7     A.   And after that, he came and he spoke with
8  me.
9     Q.   And he asked you to provide the package to
10 your boss, didn't he?
11    A.   Not the first thing, but the last, the last
12 thing he did, because he wanted to handle the
13 package to the boss first.
14    Q.   But your boss was not there?
15    A.   No.
16    Q.   Where was he?
17    A.   I don't know.  I didn't ask him.  I don't
18 ask him.  I never ask him about that.
19    Q.   And what is your position in the company?
20    A.   I am special security or private security
21 for Mr. Saif in the company.
22    Q.   You were his assistant or security?
23         THE INTERPRETER:  Oh, he's secretary,
24 not security.  He's the special secretary of
25 Mr. Saif.

Electronically signed by Mary Burkes (201-400-728-1433)                    a6c27227-8bfe-4167-8d48-6898da751694

```
1       Q.  (By Mr. Buzbee)   How many secretaries does
2   he have?
3       A.  Two other persons.  But they go out with
4   him and come back to the company.
5       Q.  Okay.  And do you see him often?
6       A.  When he comes to the office, yes.
7       Q.  How often does he frequent the office?
8       A.  Sometimes it's daily.  Sometimes it's for
9   three, four days.  And after that -- and after
10  time, it's after work time.  Sometimes it's after
11  work time, I don't see him.
12      Q.  Do you generally deliver packages that are
13  brought to his attention?
14      A.  Yes.  If he asks me to do so, I do.  And if
15  sometimes he asks me to do, I handle packages to
16  him.
17      Q.  Who opened the package?
18      A.  I don't know.  It was opened?
19      Q.  I'm asking you:  Who opened the package?
20      A.  I don't know.
21      Q.  Did you finally give the package to your
22  boss?
23      A.  No.
24      Q.  You still haven't given it to him?
25      A.  No.  I handed it to the lawyer -- to the
```

Electronically signed by Mary Burkes (201-400-728-1433)          a6c27227-8bfe-4167-8d48-6898da751694

1    lawyer who came to Dubai.

2        Q.   How long ago?

3        A.   Two to three weeks ago.

4        Q.   Okay.  So two or three weeks ago, you gave

5    it to which lawyer?

6        A.   The person who is printing now.

7        Q.   Okay.  So -- and why did you do that?

8        A.   Mr. Ali asked me to give him -- to handle

9    him the package.

10       Q.   And what did you -- what did the package --

11   where was the package until you finally gave it to

12   the lawyer that's sitting at this table?

13       A.   In the reception is -- we have -- we have a

14   box in our reception where we throw things that we

15   don't need.  It was there all the time.

16       Q.   Why did you throw it in that box?

17       A.   Documents, things, packages that we don't

18   know, magazines, always we throw -- we put in that

19   box.

20       Q.   Who told you to put it in the box?

21       A.   Nobody.

22       Q.   So somebody gave a package to you to give

23   to your boss, and you decided to throw it in a box?

24       A.   It wasn't important.

25       Q.   How do you know it wasn't important?

1    white envelope and put it at the reception in July;

2    is that right?

3        A.   Yes.

4        Q.   And that's the reason you put it at the

5    reception?

6        A.   Yes.

7        Q.   He told you not to open it, didn't he?

8        A.   Yes.

9        Q.   He told you, "Do not -- whatever you do, do

10   not give it to the Sheikh," right?

11       A.   No, he didn't say that.

12       Q.   Does the Sheikh have an office at Pearl

13   Properties?

14       A.   No.

15       Q.   Does he have a desk, a secretary, anything

16   there at that business?

17       A.   No, never.

18       Q.   How often have you seen him at Pearl

19   Properties?  And I mean --

20       A.   Never.

21       Q.   And --

22       A.   Not once.

23       Q.   And you've -- how long have you worked for

24   Pearl Properties?

25       A.   One year now.

Electronically signed by Mary Burkes (201-400-728-1433)          a6c27227-8bfe-4167-8d48-6898da751694

1              THE INTERPRETER:  Okay.

2      Q.  (By Mr. Buzbee)  "I work in the Emirate of

3 Dubai under a working visa for Pearl Properties";

4 is that true?

5      A.  It's true.

6      Q.  "Which is owned solely by Sheikh Issa"; is

7 that true?

8      A.  And there is -- there is a difference

9 between "visa" and "owned."  All our visas were

10 issued according to this Pearl company, from -- all

11 our visas were stamped on the office of the chair,

12 all the workers, the staff, the people who are

13 working that Pearl company.

14      Q.  Okay.  My question --

15      A.  And there is a difference between the

16 "visa" and "owned by."

17      Q.  Sir, I'm asking you whether Sheikh Issa

18 owns Pearl Properties.  You say he does, in your

19 affidavit.

20      A.  I don't know who owns this company.  Why?

21 Because it's Mr. Saif who has the -- who has the

22 authority to sign everything, all papers of the

23 company.

24      Q.  Okay.  So you don't know whether Sheikh

25 Issa owns Pearl Properties or not?

Electronically signed by Mary Burkes (201-400-728-1433)                a6c27227-8bfe-4167-8d48-6898da751694

1    Q.   Okay.  But you know that your passport is
2   stamped by Sheikh Issa's office?
3    A.   (Witness nods head.)
4    Q.   So you know he has some role in this.  You
5   just don't know what it is?
6    A.   I don't see him.  I never see him.  I know
7   that all the work is done by Mr. Saif.
8    Q.   Do you recognize the man that appears in
9   Exhibit 7 to the Sheikh's deposition?
10    A.   No, I don't know.
11    Q.   You don't know that that's Sheikh Issa?
12    A.   No.
13    Q.   Okay.  So you wouldn't recognize him if you
14   saw him on the street?
15    A.   No.
16    Q.   You don't remember when you saw him at his
17   brother's -- giving condolences to his brother?
18    A.   Yes.  It was one minute.  I only shaked his
19   hand.  And he had very dark glasses, big dark
20   glasses on his eyes.  And so it was one minute.
21    Q.   Uh-huh.  Who wrote the language in the last
22   sentence of Paragraph 3?
23         Stop.  Let me try that again.
24         Who wrote the language in the second to
25   last sentence of Paragraph 3?

1         THE INTERPRETER:  "Second to last"?

2         MR. BUZBEE:  Yes.

3    A.  It came to me written.  I only modified it.

4    Q.  (By Mr. Buzbee)  Which part did you modify?

5    A.  Truly, I don't remember.  Exactly, I don't

6    remember.

7    Q.  Okay.  What is Saif al Swuidi's

8    relationship to Sheikh Issa?

9    A.  I don't know what his relationship.  I know

10   that they are relatives, but exactly, I don't know.

11   Q.  Tell me what the foreigner said when he

12   handed you the package.

13   A.  First before he handed me the package, he

14   asked me about Mr. Saif.  After that, he told me

15   that he would like to handle it personally to

16   Mr. Saif.  Then he gave it to me and told me to

17   give it to Mr. Saif.

18   Q.  Is that all he said?

19   A.  He spoke about a few things.  I didn't

20   understand all of it, but he told me that he wanted

21   to speak with Mr. Saif.

22   Q.  Are you sure that's all he said?

23   A.  No.  There were conversation.  He told me

24   that he was going to travel and that he needs to

25   see Mr. Saif and to give to him this package.

Electronically signed by Mary Burkes (201-400-728-1433)        a6c27227-8bfe-4167-8d48-6898da751694

# EXHIBIT 25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BASSAM NABULSI | § | |
| | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-06-2683 |
| | § | |
| | § | |
| | § | |
| H.H. SHEIKH ISSA BIN ZAYED AL | § | |
| NAHYAN (the 'Defendant' or 'Sheikh Issa') | | |

**EXPERT WITNESS STATEMENT**
**OF**
**Dr. FARAJ ABDULLAH AHNISH**

TO THE HONORABLE JUDGE OF SAID COURT:

I, Dr. Faraj Abdullah Ahnish, do hereby solemnly affirm and state as follows:

1. I am a citizen of the United Arab Emirates ("UAE"). I am a lawyer licensed to practice in the UAE with a right of audience before all courts in the UAE. I hold a Ph.D degree in International Law from the University of Cambridge, England, and am presently the Managing Partner of the law firm of Hadef, Legal Consultants & Advocates, of which I am a founding member. The said firm has offices in Abu Dhabi, the capital of the UAE, and Dubai, UAE.

2. I have been actively practicing law in the UAE since I joined the law firm Hadef, Legal Consultants & Advocates in 1990. This statement is being made by me at the request of United States counsel for the Defendant, in my capacity as an expert on UAE law, to assist the Honourable Court by providing a legally and factually

IC-39-(

1/14

06.08.08/FAA/LTE/av

Exhibit No. _____
Worldwide Court
Reporters, Inc.

accurate narrative of the UAE Law relating to the Service of Process and to give an expert opinion on whether the Service of Process as described in the document titled "Return of Service" (as will be defined below) is considered or held legal and constitute proper service of process under UAE law.

3.   I have been supplied with a copy of, and reviewed the said document titled "Return of Service" said to be sworn by a Mr. Nelson Tucker before the United States District Court in the Southern District of Texas(The Return of Service).The document contains a total of fourteen paragraphs, and the following is a brief outline of the process undertaken therein:

4.   Mr Tucker outlines in the Return of Service his personal credentials as a Process Server in the United States and the method of service he claims to have used in the UAE on previous occasions. On 5th of June 2008 he was assigned by The Buzbee Law Firm in the United States to personally serve a summons and Plaintiff's First Amended Complaint upon Sheikh Issa Bin Zayed Al Nayan (Sheikh Issa), at his home and business address in the UAE. This is in connection with the civil claim quoted above in which Sheikh Issa is a defendant.

5.   Mr Tucker states in the Return of Service the following:

- On 17th June 2008 he travelled to Dubai for the purpose of serving the process personally on Sheikh Issa.

- He attempted service on the 19th June 2008, at Emirate Towers Office building, 45th floor, Dubai, an address he refers to as "the defendant's business address". He furnishes no evidence in the form of documentation or an affidavit of a witness that this address is legally and formally the business address of the Defendant.

- He stated that he was informed by the security guard at Emirate Towers Office building that Sheikh Issa had moved offices. His statement does not provide any details on the particulars of the said security guard.

- On the same date Mr Tucker telephoned a number he obtained, allegedly belonging to Sheikh Issa. He spoke to a receptionist who advised him that Sheikh Issa was not in the office, but that his Business Manager could assist.

- Mr Tucker then attempted service of the process on the Defendant at what appears to be a company under the name of the Pearl Properties, whose business address is said to be located at Oud Medha Road, Dubai. Mr. Tucker's statement is not supported by any documentation or affidavit as to the legal and proper existence of the company called 'Pearl Properties'.

- He states that he called the telephone number for Pearl Properties and the receptionist advised him that the Defendant was not in the office. He also states that he learned through his research that the Defendant is the owner of Pearl Properties. Mr. Tucker does not in his statement give any details as to the sources of his 'research'.

- Mr Tucker then attempted service on the Defendant in the offices of Pearl Properties when a male met with him and identified himself to him as a Mr. Ismail Albars. Mr. Tucker further states that he advised Mr. Albars as to the general nature of the papers and he, that is, Mr. Albars, agreed to accept them on behalf of the Defendant. As will be seen below, Mr. Albars refutes this statement of Mr. Tucker.

- On the same date, Mr Tucker mailed a copy of the service documents to the Defendant at the same address of Pearl Properties, Oud Medha Road, Dubai 'via certified mail in Dubai'.

- He states that he mailed further copies to the Palace of Sheikh Issa and the business address stated on the service documents 'via regular mail'. Mr. Tucker states that 'There is no method of certified mail service in the UAE providing for a return receipt.' This is not accurate: a mail with registered delivery service (providing for a return receipt) is available in the UAE and is occasionally used by, amongst others, lawyers for mailing legal notices.

- Mr. Tucker further states that there is no treaty between the United States of America and the United Arab Emirates related to service of process.

- Mr Tucker concludes by stating that there are no other known addresses for service and that he is satisfied that the service accomplished is proper service under the laws of the UAE and the United States.

6.  I have also been supplied with a copy of a document titled "Declaration of Ismail Albars", in connection with this proceedings and have reviewed the contents of the same. Again I will briefly outline the content of this document below:

- Mr Ismail Albars states at the outset that he is competent to testify to the matters set forth in his declaration and makes clear that he has personal knowledge of the facts set forth regarding the "receipt of an envelope" and his relationship with Sheikh Issa unless otherwise indicated,

- Mr Albars states that he is 39 years old, of Syrian Nationality, completed secondary education but holds no academic qualifications. He states that he works in the Emirate of Dubai, under a working visa for Pearl Properties, which he states is owned solely by Sheikh Issa.

- He goes on to state that Pearl Properties is a Real Estate Management and Development Company and that he started work at the company on November 10th 2007, as the Secretary to a Mr Saif Al Swuidi, the CEO of Pearl Properties. His responsibility includes organizing Mr Saif's meetings and schedules and handling his correspondence.

- Mr Albars states that he has only met Sheikh Issa once, when himself and other members of staff at Pearl Properties visited Sheikh Issa's residence in Al Ain, a separate Emirate from Dubai, to offer their condolences after the tragic death of his late brother, Sheikn Nasser Bin Zayed Al Nahyan

- Mr Albars goes on to state that he has not worked with Sheikh Issa on any matters at Pearl Properties nor has he ever heard of him being in the office. He states categorically that he does not report to Sheikh Issa or handle any duties related to Sheikh Issa.

- He states that he is not authorised to act as Sheikh Issa's representative or agent for any purposes and that he has never made representation to anyone that he is a representative or agent of Sheikh Issa.

- Mr Albars then outlines that when he arrived at his office at Pearl Properties (presumably on the relevant date of the Service of Process by Mr Tucker, as no date is indicated), he saw a low level worker named Mustafa, standing with a foreign man (presumably Mr Tucker). Mr Albars says that he, that is, Mr Albars, did not pay attention to the foreign man at the time.

- After a period of approximately five minutes of the foreign man with Mustafa, Mustafa informed Mr Albars that the foreign man was looking for Mr Saif. He says he was asked in English whether Mr Saif was present and that he replied that Mr Saif was not present. Mr Albars states that he was then asked when Mr Saif would arrive, and that he told the foreign man that Mr Saif was a very busy man and that he, that is Mr Albars, did not know when Mr Saif would arrive, but that the foreign man could wait for him.

- Mr Albars states that he asked the foreign man for his name and information, but this was not given. He states that instead, the foreign man told him that he would like to hand deliver an envelope to Mr. Saif Al Swuidi. Mr Albars states that he then asked the foreign man to come another time in order to personally deliver the envelope to Mr. Saif.

- He states that the foreign man asked him, that is Mr Albars, to give the envelope to Mr. Saif, because he, that is the foreign man, could not wait for Mr. Saif. Mr Albars states that before the foreign man left, he, that is, Mr. Albars, asked him again for his name and information. He states that the foreign man wrote some information on a small piece of yellow paper and put it over the envelope.

- Mr Albars further states that when he was asked by the foreign man about his name and job title, he introduced himself as Secretary of Mr. Saif Al Swuidi and not as an Assistant to Sheikh Issa.

- Mr Albars states that he did not sign for or provide a receipt for the envelope, and that he just accepted the envelope from the foreign man for delivery to Mr Saif. He says he did not agree to accept the envelope on behalf of Sheikh Issa nor did he agree to deliver the envelope to Sheikh Issa.

- Mr Albars goes on to state that at the time he accepted the envelope for Mr. Saif, he did not know anything regarding the contents of the envelope or that the contents were in relation to Sheikh Issa. He states that the foreign man never discussed the nature of the contents of the envelope with him.

- Mr Albars states that Sheikh Issa's name was never mentioned by him, that is Mr. Albars, during the course of his conversation with the foreign man.

He states that he never made any representation to the foreign man that he was employed by Sheikh Issa or that he was authorised to accept correspondence on behalf of Sheikh Issa.

- He further states that after the foreign man left, he saw the yellow piece of paper with an international phone number written on it. He states that because the envelope was not formally addressed to anybody and did not have the address and name of the sender on the reverse side, he normally did not give any priority attention to such correspondences.

- He concludes by stating that due to the previous point and the fact that Mr. Saif was not available during that time, (he was abroad – outside UAE and is a very busy man ), he, that is Mr Albars, has not been able to deliver the envelope or it's content to Mr. Saif. He goes on to state that he has not delivered the envelope or it's content to Sheikh Issa.

7.  Having outlined the contents of the documents at my disposal and in order to address the issue as to whether the Service of Process as described above is considered or held legal and constitute proper service of process under UAE law, I will outline briefly the provisions of the law governing service of process in the UAE. I will also analyse whether a foreign company and /or a private person qualifies to serve court processes under UAE Law.

8.  The relevant law is Federal Law No. 11 of 1992 on Civil Procedure as amended by Federal Law No. 30 of 2005 (the Civil Procedure Law), in particular Articles 5 to 13.

9.  Generally, the Civil Procedure Law refers to the service of Process as "Notification" and henceforth I will make such reference when the context so requires. Article 5(1) of the Civil Procedure Law states that:

*"Notification shall be served on the litigant's request or by virtue of a court order by a summons clerk or in the manner specified by Law."*

A summons clerk under UAE law is a civil service officer who is appointed and trained by the relevant government authority in the UAE and whose office is customarily attached to one of the UAE Courts circuits.

10.    Article 5(2) of the Civil Procedure Law goes on to state the following:

*"Notification may also be served through a company or a private office or more. The Cabinet of Ministers shall upon the proposal of the Minister of Justice..., issue the regulations pertaining to the work of such companies and offices as well as the terms and conditions required for practicing this work according to the provisions of the law."*

11.    Article 5(3) of the Civil Procedure Law also states that the employee of a company or a private office serving a summons shall be deemed to be a summoner (i.e. a summons clerk), for the purpose of the law.

12.    Article 5(4) states that if the summons clerk is unable to serve the notification, the competent Judge must be informed in order that appropriate action can be taken.

13.    It is evident from the provisions of Articles 5(1), (2) and (3) above that the persons/entities qualified to serve summons in the UAE under the Civil Procedure Law are:

●    a civil service officer appointed as a summons clerk;

●    a company (subject to the issue of regulations and terms and conditions of practice); and

●    a private office (subject to the issue of regulations and terms and conditions of practice); an employee of a company or private office who carries on the processing as mentioned above, is regarded as a summons clerk.

14.    I will now deal in more detail with the provisions of Article 5(2) of the Civil Procedure Law and in particular the provision relating to the issue of Regulations by the Cabinet of Ministers upon the recommendation of the Minister of Justice, pertaining to the work of companies and offices now[1] authorised to serve summons. These regulations are found in Cabinet of Ministers Decision No 11 of 2006. Articles 1, 2 and 3 set out the conditions and regulations which companies and offices carrying out the business of process service must adhere to.

15.    Article 1 of Ministerial Decision No 11 of 2006 stipulates the following:

---

[1] *This was introduced in 2005 as an amendment to Law No 11 of 1992 on Civil Procedure.*

*Conditions for companies and private offices carrying out the business of judicial notification are as follows:*

1. *"To be a company or branch of a company or an office or a representative office established in the State* in accordance with the provisions of the laws of the State;

2. *The scope of activities of the company or the office has to be of similar services;*

3. *The company or office has to commit  to open branches or offices in the Emirates and their major cities;*

4. *The company or office shall have  the necessary competence to practice the work of judicial notification services, and to have the sufficient capacity to do so in the best way possible;*

5. *The company or office shall abide by and respect the laws, regulations and legislations   in force in the State, especially those related to Judicial Proceedings;*

6. *The employees of the company or the office have to be fully aware of the geographical and administrative distributions in the State; and*

7. *The company commits to train its employees on its own account and according to the training program prepared by the Institute of Training and Judicial Studies in cooperation with the Ministry of Justice"*

16. As outlined in the provision of Article 1 of Cabinet of Ministers Decision No 11, in order for a company or private office to carry out the business of serving processes in the UAE, they must meet the conditions stipulated in that Article. Particularly of note is the condition that any such company or private office, or a branch of a foreign company must be established in the United Arab Emirates in accordance with the relevant law. The relevant law regulating the formation of a company or branch of a foreign company in the UAE is Federal Law No. 8 of 1984, as amended.

17. This condition in my view is a pre-requisite to the fulfilment of any of the other conditions stipulated in Article 1 and crucial to the present case. It also answers the question "whether a foreign company qualifies to serve court processes under UAE Law" In my view the answer to that question is Yes, provided that the foreign company has a branch or representative office established in the UAE according to the laws in effect. The relevant law regulating the formation of branch or representative companies in the UAE is Federal Law No. 8 of 1984 (the Commercial Companies Law).

18. As to the Question "whether a private person qualifies to serve court processes under UAE Law, again the answer is yes, provided that person is an employee of a company or private office or a branch of a foreign company established in the

UAE according to the laws in effect and abiding by the conditions and regulations stipulated in Cabinet of Ministers Decision No. 11 of 2006. In particular, such an employee has to be fully aware of the geographical and administrative distributions in the UAE and be trained by the company, according to the training program prepared by the UAE Institute of Training and Judicial Studies in cooperation with the Ministry of Justice.

19.   **Article 2 of Cabinet of Ministers Decision No 11 of 2006 goes on to stipulate the following:**

*Companies and offices responsible for processing judicial notifications must commit to the following:*

1.   *" Follow the procedures set forth in the Civil Procedure Law, when implementing the service of notification*
2.   *Execute notification during the period set by the Ministry of Justice whether in regular suits or in urgent/referee*
3.   *Return a copy of the notification after being signed by the r recipient, within the time frame set for service of the notification*
4.   *Maintain the confidentiality of information and papers disclosed to employees and staff of the company or the office*
5.   *Provide the necessary work team in addition to the requirements needed to perform work that achieves the purpose*
6.   *Keep necessary records for data entry set by the Ministry of Justice*
7.   *The employees of offices and companies cannot proceed with notifications to persons they have interests with or who are related to them up to the 4th degree*
8.   *Any other obligations set by the Ministry of Justice in the contract concluded with the company or the office"*

20.   Article 7 of the Civil Procedures Law sets forth the fundamental procedures that must be adhered to when serving a process.

These are widely recognised and strictly observed by notification officers in the UAE. The most essential requirement under these procedures is that the notification document must have essential data and information. These include:

(a)   *date and time of such notification,*
(b)   *details of the party requesting notification: full name, occupation or function, address and place of work, details of the party's representative: full name, occupation or function, address and place of work, if working for a third party,*

(c)    *details of the party being notified: full name, occupation or function,*
       *current or last known address, place of work*
(d)    *particulars of the Notification Officer: name, function, department and his*
       *signature on the original and copy,*
(e)    *subject of the notification,*
(f)    *full name of the person to whom the notice is delivered and his signature,*
       *seal or thumb print on the original to acknowledge receipt or indicate*
       *refusal and the reason for such refusal.*

The above information must be recorded in writing in the notification sheet in duplicate. A copy of the sheet, signed by the recipient, must be returned to the case file for review by the court presiding over the claim prior to the hearing date.

In his declaration, Mr Albars states that he was delivered by Mr. Tucker of an envelope and was asked by Mr. Tucker to deliver it to Mr. Saif Al Swuidi. He further states that the envelope was not addressed to anyone; nor, that is Mr. Albars was advised of the contents of the envelope. Neither Mr. Tucker nor Mr. Albars referred to a 'notification sheet' being delivered by Mr. Tucker to Mr. Albars. Neither of them mentions that Mr. Albars signed on any document as evidence of acknowledgement of receipt of any document. Mr. Tucker mentions in his statement that he explained the contents of the envelope to Mr. Albars but he never refers in his statement to a detailed notification sheet being delivered to and signed by the recipient (that is Mr. Albars). On the basis of the above, it is my view that the fundamental procedures set forth under Article 7 above have not been satisfied by Mr. Tucker's attempt to serve the process.

21.    **Article 3 of Cabinet of Ministers Decision No 11 of 2006 states as follows:**

*"The Ministry of Justice prepares the necessary contracts for the carrying out of*
*the business of serving judicial notifications, and is empowered to sign with*
*companies or their branches that have the required conditions and obligations as*
*mentioned in articles 1 and 2 of this decision."*

In order words, the UAE Ministry of Justice is the body in charge of preparing the necessary outsourcing contracts for carrying out the business of serving judicial notifications, and is empowered to sign such contracts with companies or their branches which have the necessary qualifications mentioned in articles 1 and 2.

22. Applying the foregoing provisions to the present case, I respectfully submit that the attempt by Mr. Tucker to service the Process in the manner described by him does not satisfy any of these mandatory provisions of the Civil Procedures Law relating to the process of services. And therefore does not constitute a valid process service under these provisions.

23. I will now outline the different methods of service recognised and considered as valid service on various categories of respondents as stipulated under the UAE Civil Procedure Law.

• **Service on natural persons:**

24. Article 8 of the Civil Procedure Law states that a copy of the notification should be delivered to the person to be notified or to his address or place of work. It can also be delivered to him wherever he may be.

25. In the event that he is not present at his address, the law provides that the notification may be delivered to a spouse or relation living with him. Also if the party to be notified is not present at his place of work, a copy may be delivered to a person, confirming that he is responsible for management of the said place or that he is employed there.

26. Any such person must appear to be at least 18 years of age and their interest should not be manifestly contrary to that of the respondent.

27. The Civil Procedure Law further stipulates the procedure to be followed in the event that there is no one qualified to accept delivery of the notification either at the home or work address. In such a case the, the Notification Officer must indicate this on both the original and copy of the Notification and inform the competent Judge, who then orders that a copy of the Notification be placed on the notice board and the door of the residence of the person upon whom the notice is to be served, or the door of his last known address.

28. An order can also be made that the Notification be published in a large circulation Arabic language daily newspaper published in the country. This procedure will also be followed if the person to be notified did not indicate an elected address or if

the information he gives is inadequate or incorrect, or he cancels the elected address.

The term "competent Judge" means the judge who ordered or authorised the issue of the Notification.

- **Service on Government departments:**

29.    These would include ministries, federal and local government, public bodies and public corporations of all kinds. Service of notification is effected by serving it on their legal representative(s).

- **Service on Juridical Persons:**

30.    These include companies, partnerships, private establishments and private legal entities. Notification is effected by serving it at the head office, on the legal representative, or any one deputising for him. If they are absent, the notification can be delivered to an employee in the office. Where there is no head office the copy of the notification should be delivered to the representative in person or to his home address.

- **Service on Foreign Companies:**

31.    Article 9 (3) of the Civil Procedure Law stipulates that where a foreign company has a branch or office in the UAE, notification will be served on the person responsible for the branch or office or their legal representative in the UAE. If there is no legal representative present, the notice may be delivered to an employee at the office.

- **Service on a Respondent residing abroad:**

32.    The Civil Procedure Law in Article 9 (7) stipulates that with regard to persons with a known address abroad, notification will be delivered to the representative of the Ministry of Justice for forwarding to them through diplomatic channels, unless there is a special agreement to regulate the means of notification.

33.    The various methods of service as outlined above are the manner of service recognised as valid service in the different circumstances under UAE Law.

However having said that, I would draw the attention of the Honourable Court to the provision of Article 13 of the Civil Procedure Code.

34.   Article 13 of the Civil Procedure Law states:

*"The procedure is a nullity if so stipulated expressly by law; if it is flawed; or if there is a material defect which defeats the purpose of the procedure."* The Article goes on to state:

*"Notwithstanding this stipulation, the procedure shall not be a nullity if it is shown that the procedure serves the intended purpose."*

*The term "Procedure" here means any procedure described by the Civil Procedure Law, including the procedures described under the Service of Process provisions.*

35.   Having reviewed the process adopted by Mr Tucker in the current case vis-à-vis the provisions of the Civil Procedures Law, it is my view that the service of process as described by Mr. Tucker is fundamentally defective to the extent that it 'defeats the purpose of the process' on the following accounts:

a)   It was effected by a private person who under the Civil Procedures Law does not qualify as a summoner or a notification clerk. Mr. Tucker is not an employee of a UAE company or a branch of a foreign company established in UAE for the purpose of providing summons processing services;

b)   Mr. Tucker does not obviously have any outsourcing contract or similar arrangement with the UAE Ministry of Justice for providing summons processing services; and

c)   Mr. Tucker attempt to serve the process as outlined by himself failed to satisfy all the mandatory procedures that will have to be followed under UAE Law for effecting a valid process. These procedures were discussed under the preceeding paragraphs of this Statement.

36.   In view of the above flaws, it is my opinion that the Service of Process as described by Mr Tucker in the document titled "Return of Service" is a nullity under Article 13 of the Civil Procedure Law: It is flawed and has material defects which defeats the purpose of the procedure, being in this case the Service of Process

IC-39-01/47541D.4 (FAA)                      13/14                      06.08.08/FAA/LTB/av

37.    I declare under penalty of perjury under the laws of the United States of America that the foregoing statement is, to the best of my knowledge and belief, true and correct.

Executed on August 6, 2008, in Abu Dhabi, United Arab Emirates.


Dr Faraj A Ahnish